The opinion of the court was delivered by
McEnery, J.
These suits were consolidated, but it seems that we have only to deal with a transfer or sale of certain property made by defendant, Theus, to his wife.
We need not notice the facts as to the insolvency of the husband and the attendant alleged suspicious circumstances of the sale by the *1438 husband to the wife. These facts may exist and the sale to the wife to replace her paraphernal property converted by the husband be legal and valid.
As repeatedly stated by this court the essential facts to maintain the validity of the dation are the real indebtedness of the husband to the wife, the just value of the property transferred for the existing debt, and the delivery of the property to the wife.
If Theus owed his wife the price stated in the dation en paiement, and the property bears a reasonable proportion in value to the price, and she actually was placed in possession of the property before any right was asserted upon it, the dation will be maintained, regardless of the motives which actuated the husband in making restitution and of the financial embarrassment in which he may be placed.
In the instant case we will confine ourselves to an examination of the question whether the debt was owing from the husband to the wife.
Theus married the daughter of Captain Brice, a man of ample means, to aid and assist the husband, or to give to his wife ample portions of his fortune, as she was an only child. In 1882 Theus was in commercial business in the firm of Theus & Marburry. Captain Brice gave Theus two thousand dollars and loaned Marburry two thousand dollars, for which he took his note. Marburry sold his interest in the firm to Theus, the price being the two thousand dollar note held by Brice. This sum of four thousand dollars^ it is alleged, Captain Brice gave to his daughter, which the husband converted, and for which he is indebted. Brice says that it was the intention that this sum was to be given to the wife; that his intention was that Theus should receive it for her account, and that for this sum he had no expectation of a return, nor was it his intention to receive from Theus a reimbursement. It is unfortunate that his intention was not expressed at the time, preserved in such shape as to be valuable to the wife and daughter, it is a noticeable fact that the wife had no appreciable knowledge of this donation; nor of the others which it is alleged the father made to her. The circumstance of an absolute absence of any declaration at the time, or any evidence whatever that the money was intended for the daughter, forces the conclusion that the money was a loan to the son-in-law, or an accommodation to him. This we think is sustained by the subsequent transaction between Brice and Theus. But this is the only item of the indebted *1439 ness which could possibly be allowed, and it is so insignificant in value to the property transferred that the dation would be set aside on this account. The money, if intended for the wife, was by the donor given directly to the husband to be used in commercial business, and to stand its chances in the uncertainties of trade. It was, given then, by the donor, for use by the husband immediately and under such conditions it would be carrying protection to the wife, far beyond the already liberal construction which the court has placed upon the articles of the Oode in her behalf in the restitution of dotal and paraphernal funds. Oaptain Brice finally became a member of the firm of Theus & Oo. He took no active interest in the firm, put nothing in it and, as he says, drew nothing out. His name was permitted to be used only to strengthen the firm and to give it credit. Yet he was a partner and was, with Theus, responsible for the firm’s debts. He kept an account there, although it is stated he knew nothing of the manner in which the books were kept and never authorized the entries. They were made, however, and he is not in a position to deny them.
During the existence of the firm he advanced several large sums of money to Theus, which he says were also gifts to his daughter. Oaptain Brice was credited with these sums as against his account for merchandise which he owed, and in a running account at the dissolution of the firm there was a large balance due him. The amounts were moneys to Oaptain Brice’s credit in Monroe and New Orleans, and were placed to Theus’ credit, and drawn against by him, and on Theus & Oo.’s books credited to Oaptain Brice.
These amounts Oaptain Brice says were intended as gifts for his daughter. Whatever may have been his intention, the facts show that they went into a commercial firm of which he was a member and figured in its affairs. The firm of Theus & Oo. was embarrassed. A large tract of land, some 2800 acres, was sold by Brice to Theus. He says no price was paid for it, and this was also intended as a gift to Mrs. Theus. The matter also rests upon the intention, without an extraneous fact to show that a gift to Mrs. Theus was made. Theus mortgaged the property, and we understand Oaptain Brice to say that the “ land transaction ” was for the purpose of raising money for the firm of Theus &Oo., or for securing by mortgage of the property some of the large creditors of the firm.
If we have misinterpreted his testimony, the facts show that the *1440 land was mortgaged to two creditors, in New York and New Orleans, for the purpose of securing the firm’s indebtedness. Under the facts of this case this question is suggested: Can a parent advance money directly to the husband with the intention that it is a gift to the wife, when at the very moment of its advance there is the intention also that the money shall be instantly used by the husband in his commercial ventures? Every rule of construction is that the money is loaned to the husband, and can not be considered as a donation to the wife.
There is no doubt that Captain Brice, who is so well and favorably known, believed that by assisting the husband he was advancing to his daughter a part of his fortune, which would be returned to her. His testimony is on this line, and is open and candid; but it is unfortunate that his intention did not find some practical form in which io embody itself.
Judgment affirmed.
Nicholls, C. J., absent.